RECEIVED

JUL 0 1 2005

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
MONROE LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| AMERICAN CENTRAL INS. CO, ET AL. | CIVIL A. NO. 02-1989 |
| VERSUS | JUDGE ROBERT G. JAMES |
| HYUNDAI MOTOR AMERICAN CORP, ET AL. | MAG. JUDGE JAMES D. KIRK |

## RULING

Pending before the Court is a Motion for Summary Judgment [Doc. No. 64] filed by Cross-Claimant Thames Autoplex, Inc. ("Thames" or "Dealer"). Cross-Defendant Hyundai Motor America ("Hyundai" or "HMA") has submitted a Memorandum in Opposition to the Motion for Summary Judgment.

For the following reasons, the Motion for Summary Judgment [Doc. No. 64] is GRANTED.

I.  FACTS AND PROCEDURAL HISTORY

On October 17, 1995, Thames and Hyundai entered into a Dealer Sales and Service Agreement ("Agreement"), which remained in full force and effect between these parties at all times relevant hereto.[1] Section 18 of the Agreement, entitled Defense and Indemnification by HMA, provides that "HMA will assume the defense of DEALER and agrees to indemnify and hold DEALER harmless in any legal proceeding," under certain circumstances and with certain exceptions, as discussed more fully below.

On January 20, 2000, Thames, an authorized Hyundai dealer, replaced a radio in a 1999

---

[1] The Agreement between Thames and Hyundai has been amended and renewed several times since October 17, 1995. However, such amendments have no bearing on the pending motion.

Hyundai Elantra owned by Ernest Jackson pursuant to the vehicle's warranty. Both the vehicle and the radio were manufactured by Hyundai.

On August 9, 2001, a fire occurred at the Windsor Inn that damaged property owned and insured by Plaintiffs American Central Insurance Co., Winchester Surplus Lines Insurance Co., and Tivoli Square, Inc. On August 9, 2002, Plaintiffs filed suit against Hyundai in Louisiana state court, asserting a claim under the Louisiana Products Liability Act. In their state court Petition, Plaintiffs alleged that the "fire occurred . . . as a result of a malfunction and/or failure of a car stereo/CD player, made by Hyundai that was designed, manufactured, assembled, distributed, supplied, installed, and/or sold by Defendant Hyundai."

On September 19, 2002, the case was removed to this Court, and on September 27, 2002, Hyundai filed an answer to Plaintiffs' Complaint.

On November 19, 2003, Plaintiffs filed an Amended Complaint, which named both Hyundai and Thames as Defendants. Plaintiffs asserted a cause of action against Hyundai for "manufacturers' product liability" and against Thames for "sellers' product liability."

On or around July 23, 2004, Thames made a demand on Hyundai for defense and indemnification under the Agreement. Hyundai offered to defend and indemnify Thames for claims arising out of defective Hyundai products, but stated it would not assume the defense of Thames for any claims of independent negligence against Thames. In other words, Hyundai offered to defend and indemnify for "everything other than independent acts of negligence" alleged by Plaintiffs against Thames.

On November 5, 2004, Thames filed a Cross-Claim against Hyundai for indemnification of costs, including attorney's fees, incurred by Thames in defending the claim asserted by Plaintiffs.

On January 21, 2005, Plaintiffs voluntarily dismissed, with prejudice, all claims asserted against Thames.

On March 15, 2005, Thames filed the instant Motion for Summary Judgment, which the Court took under advisement pending the outcome of the trial on the claims of Plaintiffs against Hyundai. On March 30, 2005, Hyundai filed a Memorandum in Opposition to Thames's Motion for Summary Judgment.

On April 14, 2005, following a four-day trial, the jury returned a verdict in favor of Defendant Hyundai and against Plaintiffs on all claims by finding that the vehicle was not unreasonably dangerous because of any manufacturing defect which existed when it left the control of Hyundai.

With full briefing by all parties now completed, the Court is prepared to rule on Cross-Claimant Thames's Motion for Summary Judgment.

## II. LAW AND ANALYSIS

### A. Motions for Summary Judgment

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder

could render a verdict for the nonmoving party. *Id.* The moving party cannot satisfy its initial burden simply by setting forth conclusory statements that the nonmoving party has no evidence to prove its case. *Ashe v. Corley*, 992 F.2d 540, 543 (5th Cir. 1993).

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise matter in which the evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

### B.   Defense and Indemnification

Thames's claim for defense arises out of Section 18 of the Agreement, which provides, in relevant part:

> HMA [Hyundai] will assume the defense of DEALER [Thames] and agrees to indemnify and hold DEALER harmless in any legal proceeding naming DEALER as a defendant and involving any Hyundai Product when the proceeding also involves allegations of:
>
> (1)   Breach of Hyundai warranty related to the Hyundai Product, bodily injury or property damage allegedly caused solely by a defect in design, manufacture or assembly of a Hyundai Product (except for tires not manufactured by FACTORY), provided that the defect could not reasonably have been discovered by DEALER by reasonable inspection or during the predelivery service on the Hyundai Product required hereunder;
> . . .
>
> Provided: . . .

4

> (5) That the complaint does not involve allegations of DEALER misconduct, including but not limited to, improper or unsatisfactory service or repair, misrepresentation, or any claim of DEALER's unfair or deceptive trade practice; [and]
>
> (6) That the Hyundai Product which is the subject of the lawsuit was not altered by or for DEALER.

Section 19(G) of the Agreement, entitled Governing Law, provides that "[t]his Agreement will be governed and construed according to the laws of the state in which DEALER is located." Louisiana generally allows parties to select the law that will determine the outcome of the disputes arising from a contract. *Verdine v. Ensco Offshore Co.*, 255 F.3d 246, 250 (5th Cir. 2001). Louisiana courts typically will not invalidate a choice-of-law provision agreed upon between parties, unless the chosen law violates a strong public policy of the state. *See, e.g., Delhomme Indus., Inc. v. Houston Beechcraft, Inc.*, 669 F.2d 1049, 1058 (5th Cir. 1982). Because the choice-of-law provision does not violate any public policy of the State of Louisiana, and since Thames is a Mississippi corporation with its principal place of business in Vicksburg, Mississippi, the Court finds that the Agreement is governed by Mississippi law.

Mississippi courts have delineated a three-tiered process for interpreting contracts. *West v. West*, 891 So.2d 203, 210 (Miss. 2004). First, the court is to look to the "four corners" of the agreement and review the actual language the parties used in their agreement. *Id.* When the language of the contract is clear or unambiguous, the court must effectuate the parties' intent. *Id.* If the language of the contract is not clear, the court will, if possible, "harmonize the provisions in accord with the parties' apparent intent." *Id.* Next, if the parties' intent remains uncertain, the court may discretionarily employ canons of contract construction. *Id.* Finally, the court may also consider parol or extrinsic evidence if necessary. *Id.*

In the instant case, the Court finds that, within its four corners, the Agreement clearly

requires Hyundai to defend Thames for claims of property damage arising from a defect in design, manufacture, or assembly of a Hyundai product.[2] However, upon review of the language in the Agreement, the Court finds that any restrictions on the duty to defend are, at best, ambiguous. Therefore, under the principles of contract construction, the ambiguous terms which restrict the duty to defend will be construed against Hyundai as the drafter of the contract. *See, e.g., Clarendon Amer. Ins. Co. v. Embers, Inc.*, 273 F.3d 1107, 1107 (5th Cir. 2001).

The parties dispute whether Plaintiffs in this case did or did not make allegations of independent negligence against Thames. Thames asserts categorically that it "was entitled to an unconditional assumption of defense in this case because, although the parties could certainly speculate about claims which might be made in the future, there were no claims of any independent negligence made against Thames in the complaints filed by the plaintiffs." In response, Hyundai argues: "Despite Thames['s] assertion to the contrary, plaintiffs have made claims against Thames arising out of its installation and sale of the subject radio. These allegations defeat any claim by Thames for defense and indemnity under the Agreement."

The subject of this dispute, Plaintiffs' Amended Complaint, states in relevant part:

8. At all times relevant hereto, Defendant Thames . . . was in the business of selling Hyundai automobiles.

9. At some time prior to August 9, 2001, Thames sold the Subject Vehicle to Ernest Jackson and installed the car stereo/CD player in the Subject Vehicle.

10. . . . A fire then occurred in the Subject Vehicle ("the Fire") as a result of a malfunction and/or failure of a car stereo/CD player, made by Hyundai that was designed, manufactured, assembled, distributed, supplied, installed, and/or sold by Hyundai and/or Thames.

---

[2]The Agreement also requires Hyundai to indemnify Thames, with the exception of when there are allegations of alterations or of improper or unsatisfactory service or repair against the dealer. However, Thames does not seek indemnity because it was voluntarily dismissed from the lawsuit.

6

## CAUSES OF ACTION AGAINST THAMES AUTOPLEX, INC.
## COUNT 1: SELLER'S PRODUCT LIABILITY

23. Prior to the Fire, Thames sold and/or distributed the Subject Vehicle and/or its parts and/or components and introduced it into the stream of commerce, among other things, in a manner so as to render it defective, unsafe, and/or unreasonably dangerous. . . .

24. . . . Thames['s] testing, sale and/or distribution of the Subject Vehicle caused defective, unsafe, and unreasonably dangerous conditions, which were the producing and proximate cause of the damages sustained by Plaintiffs. . . .

25. Defendant is liable to Plaintiffs under the LOUISIANA PRODUCTS LIABILITY ACT. . . .

Having thoroughly reviewed the record, including the Plaintiffs' Complaints, the Court concludes that, under the terms of the Agreement, Hyundai owed Thames a duty to defend in that the Amended Complaint does not clearly assert independent acts of negligence against Thames. The Court notes that the allegations against Thames for "sellers' product liability" are nearly identical to those asserted against Hyundai for "manufacturers' product liability." Additionally, there are no factual assertions in the Amended Complaint of any alterations or of improper or unsatisfactory service or repair by Thames. Rather, there are only the conclusory allegations that "Thames['s] testing, sale and/or distribution of the Subject Vehicle caused defective, unsafe, and unreasonably dangerous conditions," and that "Thames sold and/or distributed the Subject Vehicle and/or its parts and/or components and introduced it into the stream of commerce, among other things, in a manner so as to render it defective, unsafe, and/or unreasonably dangerous." The Court finds that, even under this "shotgun" approach to pleading, there are no specific, independent allegations against Thames. The Court also notes that Plaintiffs voluntarily dismissed all claims against Thames, with prejudice, prior to trial.

Finally, the Court finds that the duty to defend and indemnify contemplated under the

Agreement is analogous to that found in the insurance context. Under well-settled Mississippi law for interpreting insurance contracts, the duty to defend is significantly broader than the duty to indemnify. *See, e.g., American Guar. and Liab. Ins. Co. v. the 1906 Co.*, 273 F.3d 605, 610-11 (5th Cir. 2001). Moreover, Mississippi law provides several rules of interpretation in the insurance context, which have the effect of protecting the insured when asserting a duty of defense: the courts "interpret terms of the policies, particularly exclusion clauses, favorably to the insured whenever reasonably possible" and "any doubt as to the existence of a defense obligation is . . . resolved in favor of the insured." *Id.* (internal citations and quotations omitted). Additionally, the insurer is justified in refusing to defend only if it is clear from the face of the complaint that the allegations therein are not covered. *Id.* If there are multiple grounds for recovery, the insurer "must provide a defense if any ground falls within the terms of the policy." *Id.* And, finally, "only where 'a plaintiff's allegations against an insured are unequivocal with regard to claiming injury or damages caused by acts which, if proved, would place his claim within an exclusion from coverage, [is there] no duty to defend.'" *State Farm Fire and Cas. Co. v. Brewer*, 914 F.Supp. 140, 143 (S.D. Miss. 1996) (citations omitted).

When these rules of interpretation for the duty of defense in the insurance context are applied to the analogous context found in the Agreement, it is clear that, even if the allegations against Thames in the Amended Complaint are ambiguous, Hyundai's duty to assume the defense of Thames in this case was not excluded under the Proviso.

Based on the foregoing, the Court is persuaded that Hyundai had a duty to assume the defense of Thames in this case. Accordingly, Thames is entitled to recover costs and attorney's fees incurred in defending this action.

## C. Fees and Expenses Owed

In its opposition memorandum, Hyundai argues that, "[e]ven if Thames is otherwise entitled to defense/indemnity, which is denied, recovery of fees incurred in the pursuit of the demand are not recoverable. Additionally, the 'Affidavit' submitted by counsel for Thames has not been notarized, and is technically defective."

The Court finds all of Hyundai's arguments to be well-taken as of the time the opposition memorandum was filed. However, the Court notes that Thames has since filed a Supplemental Affidavit For Court Costs and Attorney's Fees, which has remedied each of the objections submitted by Hyundai.

First, it is well-established that, unless contracted otherwise, "the allowance of attorney's fees is limited to the defense of the claim indemnified against and does not extend to services rendered in establishing the right of indemnity." *Celotex Corp. v. Bucknell Constr., Inc.*, 325 So.2d 566, 568 (Miss. 1976). Here, the Agreement does not provide for fees and costs incurred in pursuing indemnity. Thus, the Court finds that Thames is not entitled to any fees relating to the prosecution and filing of the Cross-Claim. However, since Thames's Supplemental Affidavit For Court Costs and Attorney's Fees specifically itemizes the attorney's fees and costs that were requested for prosecution of the Cross-Claim, Hyundai's argument that "there are issues of fact over what fees/costs were incurred in connection with which claim" is now moot.

The other arguments presented by Hyundai, that "the affidavit submitted by counsel for Thames is fatally flawed in that it has not been notarized, and thus, there is no sworn proof as contemplated by the rules," is a technical objection, and it has also been cured by Thames's Supplemental Affidavit For Court Costs and Attorney's Fees.

Finally, the Court finds that the rate of requested attorney's fees of $110.00 per hour or below, as well as the number of hours and the amount of costs incurred, to be entirely reasonable under the circumstances.

9

Thus, the Court awards Thames attorney's fees and costs in the amount of $12,940.62. The Court also awards Thames the reasonable cost of the expert witness incurred in defending this suit. However, Thames has not provided the Court with appropriate evidence of this cost. Therefore, Thames is ORDERED to place in the record of this matter appropriate evidence of the cost incurred for its expert witness within ten days of the date of this Ruling and Order.

## III. CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment filed by Thames [Doc. No. 64] is GRANTED, and Thames is awarded $12,940.62, plus the cost of the expert witness incurred in defending this suit.

MONROE, LOUISIANA, this ____1____ day of ____July____, 2005.

```
                                    ROBERT G. JAMES
                                UNITED STATES DISTRICT JUDGE
```